UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------

LEE ALEXANDER, as Mayor of the City of Syracuse,
and THOMAS F. HANLON, as Chief of Fire of the
Syracuse Fire Department, and THOMAS J. SARDINO,
as Chief of Police of the Syracuse Police
Department and the CITY OF SYRACUSE,

                                          Plaintiffs,

    v.                                                    Docket No.:
                                                          78-CV-392
VICTOR S. BAHOU, President, JOSEPHINE L. GAMBINO
and JAMES T. McFARLAND, as Commissioners,
respectively of, and constituting, the Civil
Service Commission of the State of New York,
and EDWARD J. GUSTY, Commissioner of the
Department of Personnel of Onondaga County,

                                          Defendants.
-----------------------------------------------------

UNITED STATES OF AMERICA,

                                          Plaintiff,

    v.                                                    Docket No.:
                                                          80-CV-53
CITY OF SYRACUSE, a municipal corporation; LEE
ALEXANDER, Mayor of the City of Syracuse;
THOMAS F. HANLON, Fire Chief, City of Syracuse
Fire Department; SYRACUSE FIRE DEPARTMENT;
THOMAS J. SARDINO, Chief of Police, City of
Syracuse Police Department; SYRACUSE POLICE
DEPARTMENT; VICTOR S. BAHOU, JOSEPHINE L.
GAMBINO and JAMES T. McFARLAND, as Commissioners
of and constituting the NEW YORK STATE CIVIL
SERVICE COMMISSION; NEW YORK STATE MUNICIPAL
POLICE TRAINING COUNCIL; EDWARD J. GUSTY, Local
Personnel Officer, County of Onondaga,

                                          Defendants.
-----------------------------------------------------

## CONSENT DECREE

This Consent Decree consolidates two independent legal actions:

1.    One, by the City of Syracuse, alleges that the City of Syracuse is compelled to select candidates for its Police and Fire Departments from eligible lists which are based upon discriminatory Civil Service examinations and which the City alleges prevent it from integrating its public safety forces.

2.    The second, by the United States of America, alleges that there has been discrimination in the past hiring of entry level officers in the City of Syracuse Police and Fire Departments.

## I.    CAUSE OF ACTION BY THE CITY OF SYRACUSE

Lee Alexander, as Mayor of the City of Syracuse ("the City"), commenced the City's action against the New York State Civil Service Commission ("the Commission") and the Personnel Officer of Onondaga County ("the Personnel Officer").  The City requested declaratory and injunctive relief prohibiting the use of the current written civil service examinations and eligible lists used in the City's

hiring of police officers and firefighters. The City antici-
pated that this relief, together with development of new
examinations, would increase job opportunities for blacks
which the City alleged have not been hired for its public
safety forces because of apparently non-job-related written
examinations.

The Commission was named as a party because, as
required by state law, it provides the Personnel Officer with
the examinations from which eligible lists for police offi-
cer and firefighter positions are compiled. The Personnel
Officer was named as a party because, as required by state law,
he administers the examinations and prepares the eligible
lists for public safety positions.

The City has desired to achieve greater black repre-
sentation on its public safety forces and to comply with fed-
eral and state law which protect blacks from racial discrimina-
tion, including Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e, et seq., the Fourteenth Amendment
of the United States Constitution and 42 U.S.C. § 1983.
However, at the same time, the City is compelled to observe
the requirements of Section 61 of the New York State Civil
Service Law which requires the City to select police officers
and firefighters from eligible lists based upon allegedly

unvalidated examinations which are claimed to have a dispro-
portionate impact on black applicants for the City's Police
and Fire Departments.

Failure to comply with the Civil Service Law could
subject City officials to civil and criminal sanctions. Yet,
the City's failure to comply with federal law could subject
it to claims for relief by persons alleging themselves to be
victims of employment discrimination. Further, if found guilty
of such discriminatory conduct, the City could suffer the
loss of the substantial federal funds it now receives.

The City's action was commenced to resolve this
apparent conflict and to increase the number of blacks within
its public safety forces.

II.    CAUSE OF ACTION BY UNITED STATES
       DEPARTMENT OF JUSTICE

In an independent action, now consolidated, the
United States of America filed a complaint alleging that dis-
criminatory employment practices exist with respect to hiring
in the Syracuse Fire and Police Departments by reason, inter
alia, of the use of selection devices and mandated standards
(including the civil service examinations and the physical
agility tests), which the United States claims are not job-
related. The Commission, the Personnel Officer, and the

Municipal Police Training Council ("the MPTC") were joined as necessary parties under Rules 19 and 20 of the Federal Rules of Civil Procedure for a just adjudication of the Justice Department complaint.

In denying the allegations of the Justice Department complaint, the City reasserted its desire to hire in accordance with federal statutes and affirmatively alleged that, despite its recruitment program, it is not responsible for the under-utilization of blacks and females in the Police and Fire Departments due to factors beyond its control. In the past, the City had sought to increase black representation on its public safety forces by developing and maintaining special recruitment and training programs administered by the Office of Federal and State Aid Coordination and by its efforts, together with the Personnel Officer, to create special entry-level positions to facilitate the appointment of blacks.

## III.   POSITIONS OF OTHER PARTY DEFENDANTS

In the City's action, the Commission and the Personnel Officer moved to dismiss the City's complaint on the grounds that the City did not have standing, the Court lacked subject matter jurisdiction and the complaint failed to state a claim upon which relief could be granted.

The Commission and the Personnel Officer in both actions and the Municipal Police Training Council in the Justice Department action deny that the required civil service examinations used by the City violate federal law. They affirmatively allege that the mandated criteria for the selection of police officers and firefighters have been job-validated and are appropriate indicators of job performance.

## IV.   BASIS FOR CONSENT SETTLEMENT

The parties believe they have a legal and moral obligation to act at all times in the best interests of all citizens and employees and therefore need not expend public funds for litigation where there is a reasonable basis for amicable resolution in a manner consistent with affirmative action policies.

The parties in these actions affirmatively asserted, in the negotiations leading to this consent settlement, a willingness to modify future hiring practices for the Police and Fire Departments to ensure compliance with federal anti-discrimination statutes. They recognize the desirability of public safety forces which are ethnically, racially, and sexually diverse and otherwise truly representative of the community they serve. To this end, and to remedy the effects

04/29/2005 14:36 IFAX mdf@ccf-law.com → Aimee Newton 007/024

Case 5:02-cv-00837-DFH-TWP Document 60-2 Filed 04/27/06 Page 7 of 24   7.

of the allegations in the Justice Department Complaint, the City, as described hereinafter, may use race in the selection of police officers and firefighters in a manner similar to the priority which has been given to City residents over other applicants in the hiring of police officers and firefighters.

It is the purpose of the parties and the intent of this consent decree to assure that blacks and females shall not be disadvantaged by reason of race or sex in their employment as police officers or firefighters.

The City acknowledges its rights and obligations under the terms of this settlement and its commitment to achieving the hiring goals set forth herein.

The Justice Department acknowledges that the City shall have discharged its equal opportunity and its affirmative action obligations with respect to the hiring of police officers and firefighters by making reasonable efforts to meet the hiring goals set forth below, and by otherwise complying with this agreement.

It is acknowledged that in following provisions of this decree for the purpose of increasing black and female representation on the City's public safety forces, the City will incur no liability for the authorized deviations from current civil service requirements.

04/29/2005 14:36 IFAX mdf@ccf-law.com → Aimee Newton ☑008/024

Case 5:02-cv-00533-DFK-CWD Document 60-2 Filed 04/27/06 Page 8 of 24    8.

The Commission and the Personnel Officer do not concede by their agreement to this Consent Decree that they are employers or agents of an employer within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e(b), or that this Court has subject matter jurisdiction over the Commission and the Personnel Officer under said Title VII, and that the Commission and the Personnel Officer specifically reserve their right to present these issues to the Court provided, however, that any adjudication of the issues of the Commission and the Personnel Officer status as such an employer or agent thereof under Title VII or of the subject matter jurisdiction of the Court over the Commission and the Personnel Officer under Title VII shall not otherwise affect the Commission and the Personnel Officer's obligations under the terms and provisions of this Consent Decree as provided herein nor the enforcement of this Consent Decree as provided herein.

## V.    DECREE

In view of the above considerations and in view of the desire of all parties to avoid the substantial expense and uncertainty of protracted litigation, and the parties

having waived a hearing, findings of fact and conclusions of law on all issues and having agreed to the entry of this Consent Decree in UNITED STATES OF AMERICA v. CITY OF SYRACUSE, a municipal corporation; LEE ALEXANDER, Mayor of the City of Syracuse; THOMAS F. HANLON, Fire Chief, City of Syracuse Fire Department; SYRACUSE FIRE DEPARTMENT; THOMAS J. SARDINO, Chief of Police, City of Syracuse Police Department; SYRACUSE POLICE DEPARTMENT; VICTOR S. BAHOU, JOSEPHINE L. GAMBINO and JAMES T. McFARLAND, as Commissioners of and constituting the NEW YORK STATE CIVIL SERVICE COMMISSION; NEW YORK STATE MUNICIPAL POLICE TRAINING COUNCIL; EDWARD J. GUSTY, Local Personnel Officer, County of Onondaga, Docket No. 80-CV-53;

It is, therefore, ORDERED, ADJUDGED AND DECREED as follows:

1.  To accommodate the City's efforts to increase black and female hiring in its police and fire departments:

> (a) The City shall have the right, to the extent necessary to meet its obligations and goals under this decree, to grant priority to blacks who have successfully passed the applicable civil service examinations, which preference will operate in a manner analogous, but not identical, to the priority which has been given to City residents over non-resident applicants (as more particularly set forth in paragraph 7).

(b) Civil service examinations shall be provided by the Commission for entry-level police officer and firefighter positions which shall accurately measure an applicant's ability to perform on the job (as more particularly set forth in paragraph 14).

(c) At the request of any party, the Court may grant additional relief in the event it is determined that the examinations or other job criteria do not accurately measure potential job performance and have an adverse impact on black and/or female applicants (as more particularly set forth in paragraphs 14 and 15).

In consideration of the cooperative response of the parties and the Court to the City's request for assistance to improve job opportunities in its public safety forces, the City desires to and agrees to undertake the procedures set forth in this decree.

2. The City reaffirms its commitment to, desires to, and shall comply with, the requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the State and Local Fiscal Assistance Act of 1972, as amended, 31 U.S.C. § 1242 et seq., and the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 42 U.S.C. 3789d(c)(3), prohibiting discrimination on the basis of race or sex, with respect to the hiring of police officers and firefighters.

3.     The Commission and the Personnel Officer shall certify for payroll purposes and employment benefits those individuals who are appointed police officers and firefighters by the City pursuant to this decree, as the case may be.

4.     The City desires to and shall supplement its affirmative action and recruitment program in order to attract qualified black and female applicants for entry-level fire and police positions by taking the following actions:

(a)  Advertising the time and place of each civil service examination for the position of entry-level police officer and firefighter in a newspaper of general circulation in the Syracuse area;

(b)  Advertising such civil service examination in and through radio and television media in the Syracuse area;

(c)  Providing at least eight weeks written notice prior to the holding of such civil service examination, to the local chapters of the National Association for the Advancement of Colored People, the Urban League, Syracuse Minority Professional Action Conference, Inc., National Organization of Women, the Minority Community Coalition and such other black and female interest organizations which are named in the City's Affirmative Action Plan;

(d)  Providing at least eight weeks written notice to each City high school and technical and vocational school of such civil service examination and stating in such notice the desire of the City to attract qualified black and female applicants for such examination;

(e) The City shall also utilize the ser-
vices of incumbent black and female
firefighters and police officers in
its recruitment program by posting
a notice of such examination on depart-
mental bulletin boards two weeks
prior to such examination and stating
in such notice the desire of the
City to attract qualified black and
female applicants for such examination.

5. Four weeks prior to the expiration of the appli-
cation period for firefighter and police officer candidates,
the Personnel Officer shall provide the United States with a
report concerning the number of black and female applicants
for the firefighter and/or police officer examinations.

6. The City desires to and shall adopt, and use
its good faith efforts to achieve, the long-term goal to
utilize blacks in all ranks within the fire and police depart-
ments in numbers approximating their representation within
the labor force which is available for employment in the City
of Syracuse and their interest in, and ability to qualify
for, such positions. Subject to the foregoing sentence, the
parties agree that the long-term goal for blacks in each rank
is approximately 10%.

7. To achieve this long-term goal, and subject
to the availability of qualified black applicants on the appro-
priate eligible list, the City desires to and shall seek,
annually, commencing with the entry of this decree, on an

interim basis to achieve the goal of hiring blacks for 25% of all entry-level firefighter and police officer hires. To the extent necessary to meet the annual interim goal, the City desires to and shall grant a preference to blacks who have successfully passed the applicable examinations in a manner analogous, but not identical, to the preference that has historically been given to City residents in accordance with Civil Service Law § 23(4-a) as currently enacted.

8. (a) With respect to females, a long-term goal of this decree shall be to utilize females in all ranks within the fire and police departments in numbers approximating their interest in and ability to qualify for such positions. The parties shall negotiate appropriate long-term and interim goals for females within 18 months of the entry of this decree or submit the issue to the Court for resolution.

(b) Until long-term and appropriate interim goals with respect to female hires are established, the City desires to and shall use reasonable efforts as set forth in paragraph 4 to achieve on an annual basis commencing with the entry of this decree the goal of hiring qualified women for 20% of entry-level police officer positions.

(c) In the event the United States has reason to believe reasonable efforts to meet the goals set forth in

subparagraph 8(b) have not been used, the United States may
apply to the Court, upon ten days notice to the parties, for
such relief as the Court deems appropriate to enable the City
to achieve its interim female hiring goal. The Court may
grant such appropriate relief, provided the United States
has established to the Court's satisfaction after an eviden-
tiary hearing that such relief is warranted.

9. A black female hire shall count toward both
black and female goals.

10. The minimum qualifications for firefighter
applicants (other than the qualifications of the civil
service examinations and physical agility tests) may be no
more stringent than the following:

Age: Present age requirements shall remain in
effect.

Education: Graduation from an approved senior high
school or possession of a New York State High School
Equivalency Diploma or a United States Armed Forces
General Education Certificate.

Residence: Residence in Onondaga County for at
least one month immediately preceding the date of the
written civil service examination. Preference in certi-
fication of eligibles and subsequent appointment may be

given to candidates who have resided within the City of
Syracuse for one month preceding the date of the examina-
tion.

Character: Good moral character and habits. Con-
viction of a felony may disqualify a candidate for
appointment depending upon the nature and severity of
the offense.

Licensure: A New York State Driver's License to
operate motor vehicles on public highways.

Physical and Medical Requirements: Reasonable medi-
cal requirements established by the Personnel Officer.
Candidates must be physically strong and active, free
from all mental or physical defect, deformity or disease,
well proportioned within the range of accepted standards
and have satisfactory hearing and eyesight.

11. The minimum qualifications for police officer
applicants (other than the qualifications of the civil service
examinations and physical agility tests) shall be no more
stringent than the following:

Age: Present age requirements shall remain in effect.

Education: Graduation from an approved senior high
school or possession of a New York State High School
Equivalency Diploma or a United States Armed Forces Gen-
eral Education Certificate.

**Residence:** Residence in Onondaga County for at least one month immediately preceding the date of the written civil service examination. Preference in certification of eligibles and subsequent appointment may be given to candidates who have resided within the City of Syracuse for one month preceding the date of the examination.

**Character:** Good moral character and habits. Conviction of a felony shall disqualify a candidate for appointment.

**Licensure:** A New York State Driver's License to operate motor vehicles on public highways.

**Citizenship:** United States citizenship is required for all candidates.

**Physical and Medical Requirements:** Candidates must be physically strong and active, free from all mental or physical defect, deformity or disease, well proportioned within the range of accepted standards and have satisfactory hearing and eyesight.

12. The City desires to and shall continue to use eligible lists developed by the Personnel Officer in accordance with this decree.

13.    Subject to the provisions of this decreee,
the City desires to and shall consider applications for employ-
ment in the fire and police departments from any person who
meets the applicable criteria for any given position without
regard to such person's race or sex.  The parties agree that
the minimum qualification of character will not be applied
to exclude blacks and females from employment in these depart-
ments in violation of the Uniform Guidelines on Employee Selec-
tion Procedures, 43 Fed. Reg. 38290 (August 25, 1978) ("Uniform
Guidelines").

14.    (a)  The Court recognizes that the written
examinations administered by the Personnel Officer for the
positions of firefighter and police officer are developed
and graded by the Commission.  The Commission shall develop
and institute and the local Personnel Officer shall administer,
civil service examinations for the entry-level positions of
police officer and firefighter which comply with all appli-
cable state and federal laws, rules and regulations.  In the
event it is established that any civil service examination
has an adverse impact on blacks and/or females which is con-
trary to the provisions of the Uniform Guidelines (consistent
with the requirements of Title VII) and which precludes the
City from meeting the interim hiring goals set forth here,
the Court, upon application of any party filed within 10 days

of the certification of an eligible list, shall require the
Commission to provide evidence within 45 days that the exami-
nation is validated within the meaning of the Uniform Guide-
lines.  If the Commission cannot ultimately demonstrate that
the examination is job-related in accordance with the Uniform
Guidelines, this Court shall take such action as appropriate
under the circumstances to eliminate its discriminatory adverse
impact upon blacks and/or females.  Any intrusion into the
Civil Service appointment process shall be to the minimum
extent necessary to comply with the requirements of this
decree.

        (b)  Pending final resolution of the valida-
tion issue, the City may apply to the Court for permission
to hire police officers and firefighters in a manner deemed
appropriate by the Court to enable the City to meet its interim
hiring goals.  Any party may oppose the City's application.
Any intrusion into the Civil Service appointment process shall
be to the minimum extent necessary to comply with the require-
ments of this decree and the staffing needs of the City.

    15.    (a)  The Court recognizes that the physical
strength and agility standards for the position of police
officer and firefighter are established by the MPTC and/or
other appropriate authority and are administered by the Per-
sonnel Officer.  In the event it is established that these

standards have an adverse impact on blacks and/or females
which is contrary to the provisions of the Uniform Guidelines
(consistent with the requirements of Title VII) and which
precludes the City from meeting the interim hiring goals set
forth here, the Court, upon application of any party filed
within 10 days of the certification of an eligible list,
shall require the MPTC to provide evidence within 45 days
that such standards are valid within the meaning of the Uniform
Guidelines.  If the MPTC or other appropriate authority cannot
ultimately demonstrate that its standards are job-related in
accordance with the Uniform Guidelines, this Court shall take
such action as appropriate under the circumstances to elimi-
nate their discriminatory, adverse impact upon blacks and/or
females.  Any intrusion into the Civil Service appointment
process shall be to the minimum extent necessary to comply
with the requirements of this decree and the staffing needs
of the City.

(b)  Pending resolution of the validation issue,
the City may apply to the Court for permission to hire police
officers and firefighters in a manner deemed appropriate by
the Court, to enable the City to meet its interim hiring goals.
Any party may oppose the City's application.  Any intrusion
into the Civil Service appointment process shall be to the

minimum extent necessary to comply with the requirements of
this decree and the staffing needs of the City.

16.     The City desires to and shall support the imple-
mentation of this decree by making available, upon written
request of the United States, the following records or sum-
maries thereof:

> (a)  Documentation of all recruitment
>      efforts directed towards blacks and
>      females.

> (b)  All written applications and related
>      records for all persons seeking employ-
>      ment with the fire and police depart-
>      ments to the extent that such appli-
>      cations are made to the City.

> (c)  Pass/fail results by race and sex
>      for all selection standards admin-
>      istered by the City for entry into
>      the fire and police departments and
>      the selection results for the total.

17.     Within ninety (90) days after the entry of
this decree and the following June 30 and December 31 of each
of the subsequent five years, the City and the Personnel Offi-
cer desire to and shall provide the United States to the atten-
tion of Chief, Federal Enforcement Section, Civil Rights Divi-
sion, Department of Justice, Washington, D.C. 20530, the fol-
lowing, in the case of the City:

> (a)  A summary showing the total race
>      and sex composition of the uniformed
>      employees of the fire and police
>      departments with a breakdown for
>      each uniformed job classification
>      by race and sex.

(b) The number of newly hired police officers and firefighters by race and sex since the last report was filed. The report shall also show any police officer or firefighter positions which blacks and females have been offered but which they refused, showing both the job offered and the dates thereof.

(c) Pass/fail results by race and sex for all selection standards administered by the City for entry into the fire and police departments and the selection results for the total;

in the case of the Personnel Officer:

(d) Pass/fail results by race and sex for all selection standards administered by him for the positions of police officer and firefighter.

18. The Court shall retain jurisdiction of these actions for such further orders as may be appropriate. At any time after five years subsequent to the date of the entry of this Consent Decree, any party may move the Court, upon 45-days notice to the other parties, for dissolution of this decree. In considering whether the decree should be dissolved, the Court shall take into account whether the parties have substantially complied with this decree and whether the basic objectives of the decree have been achieved.

19. The measurement of the goals established by this decree shall be for each 12-month period commencing with the date of its entry except as provided in this paragraph.

The Court and the parties recognize that the immediate staffing requirements of the City may necessitate the City's hiring additional personnel for its public safety forces before the certification of new eligible lists based upon revised examinations as directed by this decree. Accordingly, in determining whether the City has complied with the terms of this decree, as previously provided, the Court shall, _inter alia_,

    (i)   find that the City is in compliance with the goals of this decree if it meets the goals herein during the extended period defined below;

    (ii)  in the event the City fails to meet these goals during this extended period, take into consideration that the City's use of the current eligible lists, prior to the certification of new eligibile lists, following the entry of this decree may necessarily have caused it to incur difficulty in meeting its goals.

For purposes of this decree, the phrase "extended period" for the police and fire forces, respectively, shall mean that period of time (if longer than 12 months) from entry of this decree to the date on which the City has hired the same number or a greater number of police officers and firefighters, respectively, from the new eligible lists as the City hired between

August 31, 1979 and the date of certification of such new
lists.  In no event shall the first measurement of goals herein
be determined for a period of less than 12 months.

20.  In the event the entry of this decree generates,
either through intervention or separate, collateral lawsuits,
attacks on the appropriateness and/or lawfulness of any correc-
tive measures contained herein, the United States and the
City of Syracuse shall defend the lawfulness of any such cor-
rective measure.  If any such collateral lawsuit arises in
any state court, then any party, upon request of the other,
shall remove such action to the federal district court.

21.  The consent of the parties to this decree shall
in no manner constitute findings on the merits, nor be con-
strued as an admission by them or any violation of the federal
statutes forming the basis of these actions.

Dated:  March 27, 1980

ENTER *by/acine, N. Y.*

HON. HOWARD G. MUNSON
UNITED STATES DISTRICT JUDGE

JAMES ANGUS, ESQ.
S. THEODORE MERRITT, ESQ.
Attorneys for United States of America
Department of Justice
Washington, D.C. 20530

DAVID M. GARBER, ESQ.
Corporation Counsel
Anthony S. Bottar, Esq. of Counsel
300 City Hall
Syracuse, New York 13202

ROBERT J. ROSSI, ESQ.
Onondaga County Attorney
D. Jeffrey Gosch, Esq. of Counsel
Attorneys for Edward J. Gusty
Onondaga County Department of Law
Civic Center - 10th Floor
Syracuse, New York 13202

ROBERT ABRAMS, ESQ.
Attorney General - State of New York
John Q. Driscoll, Esq. of Counsel
Attorneys for New York State Civil
   Service Commission, New York State
   Municipal Police Training Counsel
Office of the Attorney General
The Capitol
Albany, New York 12224

ROBERT W. KOPP, ESQ.
Bond, Schoeneck & King
Of Counsel for City of Syracuse
One Lincoln Center
Syracuse, New York   13202